MATHEW BURNHAM v. THE STATE.

1. MURDER OF THE FIRST DEGREE.—Two men, utter strangers to each other, on their first meeting engaged in a rencounter, in which one was killed. The difficulty began by an effort on the part of deceased to stop the way of the survivor as he was passing, followed by the drawing of a pistol by deceased, over which a struggle occurred for its possession. During the struggle the pistol fired and deceased fell, whereupon the survivor, after stepping from the body four or five steps, instantly returned and fired the pistol at the head of his late adversary, inflicting a mortal wound. Not more than twenty seconds elapsed from their first meeting to the consummation of the homicide : *Held*, that the circumstances attending the homicide did not afford evidence of that express malice necessary to constitute murder of the first degree.

2. See opinion for a full statement of facts held not sufficient to support a conviction for murder of the first degree.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

*Sheeks & Sneed,* for appellant, filed an able brief, which from its character, cannot be abbreviated. They cited Villareal v. The State, 26 Tex., 107; Johnson v. The State,

27 Tex., 766; Maria *v.* The State, 28 Tex., 710 ; Jordan *v.* The State, 10 Tex., 479; Atkinson *v.* The State, 20 Tex., 523; McCoy *v.* The State, 25 Tex., 33; Ake *v.* The State, 30 Tex., 466.

*A. J. Peeler, Assistant Attorney General,* for the State.

DEVINE, ASSOCIATE JUSTICE.—Appellant was indicted on the 18th of November, 1873, charged with the murder of H. C. Banks on the 16th of November, 1873, in the county of Hays. A motion for a change of venue being allowed, the cause was transferred to the county of Travis. The trial resulted in a conviction and a verdict of guilty of murder in the first degree.

The errors assigned as grounds for the reversal of the judgment will be examined in the order of their statement. The complaint of the charge to the jury is not sustained by a close examination of the instructions given. The charge did not overlook any right which the accused was entitled to.

The assignments that the verdict of the jury is contrary to law and contrary to the evidence demanded and the evidence has received from the court a thorough examination. From that examination we are led to the opinion that in the record as presented but one question is necessary to be determined; that is, whether or not the homicide (admitted) is murder of the first degree? Article 608 of the Criminal Code defines murder of the first degree as follows : "All murder committed by poison, starving, torture, or with express malice, or committed in the perpetration of arson, rape, robbery, or burglary, is murder in the first degree ; and all murder not of the first degree is murder of the second degree." Omitting from this definition all that is inapplicable to the cause before the court, there remains only the single inquiry, Does the evidence prove that appellant, in the killing of H. C. Banks, is guilty of

express malice in the sense in which the words are employed in article 608 of the code? If he is not, then the verdict is contrary to the law and contrary to the evidence.

While no period of time has been settled as necessary to elapse before the sedate and deliberate purpose can be formed, and which is evidence of express malice, and while this sedate and deliberate purpose to kill may be formed but a moment before the perpetration of the unlawful act, and while courts have sometimes attempted to illustrate by examples what acts might or might not constitute express malice, nothing more definite can in truth be said than that all the facts and circumstances of each particular case are the governing or controlling elements of the case, and determine, or should do so, the question whether the homicide is murder of the first or of the second degree, or whether it be manslaughter or excusable homicide.

The evidence in this cause is not of a conflicting character. All the witnesses for the State agree in the material facts. Defendant called no witnesses; the only persons present, Mr. and Mrs. Dugger, appeared for the State; they cannot be considered as having any bias in favor of the accused. Examining the testimony to determine the questions raised on the verdict of the jury, the following are shown to be the material facts: The deceased, H. C. Banks, is shown to have been comparatively a stranger in Hays county; nothing is shown as to his habits or disposition; he had resided a few months in Hays county in "Stringtown;" had been in the employment of the sheriff of that county during the week preceding the day of his death, and was on his way to San Marcos on the 16th of November, 1873, when he lost his life. On passing the house of L. M. Dugger, a few miles from San Marcos, he stopped, being spoken to by Dugger, a few minutes before deceased reached Dugger's premises. The defendant, who had been in Dugger's service during the preceding twelve

months, returned to the premises after an absence of about
four days, went to "the smoke-house" and commenced
packing up his clothes in his blanket preparatory to leav-
ing; he complained to Mrs. Dugger that he had not been
treated well, and was going to leave; insulting epithets,
angry and bitter words were applied and used by the pris-
oner and Mrs. Dugger to each other.   On his passing from
the house to the gate, his bundle on his back, he met the
witness, L. M. Dugger, who was returning from his con-
versation at the gate with the deceased.   Defendant re-
marked to Dugger, "I think you all have been running
over me, and I am going to leave."   The latter com-
manded him "to shut up his mouth."   Appellant made
no reply and passed on to the gate; as he approached it he
was met by the deceased, who had dismounted from his
horse, tied him to the right of the gate and stood in front
of it.   As defendant approached within a few steps of the
gate deceased said to him, "Old man, you are drinking;
you had better put down your budget and wait until to-
morrow before you go."   Defendant replied, "And who
are you?"   To which the deceased responded, by say-
ing, "I will show you who I am," drawing his revolver
at the same time, stepping back a pace and presenting
it at the defendant, who instantly dropped his bundle,
sprang forward and grasped the pistol; they struggled,
deceased to retain and defendant to take from deceased
his pistol.   During the struggle deceased was heard twice
to call out, "Mr. Dugger, get your pistol and come on."
In the struggle deceased was forced back from the gate
about eighteen feet into the road, when the pistol over
which they were struggling was discharged, the ball pass-
ing through deceased near the base of the neck; deceased
fell.   Instantly defendant, with pistol in hand, took two
or four steps, at an angle of forty-five degrees, from the
body towards the right, turned to the left, and stepping
up to deceased stooped down and shot him in the side of

the head. Dugger, who had run into the house for his pistol, on hearing Banks call to him to come on ran out and, as he states, "bursted a cap" at defendant before he shot deceased in the head; he shot twice after that at defendant before he fled.

The witnesses for the State show that deceased was about twenty-two years old, was a stout, active young man; defendant about same age, and was perhaps a little heavier than deceased. They were strangers to each other, never having met before. The opinion of the physician who examined deceased was that either wound would have caused death.

Looking over these the material facts in the case, we search in vain for evidence of that express malice, the proof of which is necessary before the defendant can be legally convicted of murder in the first degree. Does the evidence show express malice in the previous threats, menaces, or ill-will on the part of appellant? It does not. They were utter strangers, had then for the first time seen each other, and no quarrel or dispute was sought or raised by appellant with the deceased. Was the accused in the act of committing any crime or trespass, or was he then guilty of any wrongful act that gave the deceased any right, color, or pretense of right to bar or prevent defendant's exit through Mr. Dugger's gate? The shadow of such proof cannot be found in the statement of facts. There is no evidence of express malice in the fact that when a stranger, who commenced the altercation, causelessly presented a loaded pistol towards defendant's breast, he should drop his bundle and grasp the weapon that placed his life in danger. There is as little of express malice to be found in the subsequent struggle down to the moment when the deceased fell, shot through the neck. How that occurred, whether from the accidental discharge of the pistol during the struggle for its possession, or by the defendant designedly, the witnesses are unable to state,

and the wound through the neck was not known to any of the witnesses until after the removal of the body to San Marcos—the doctor who examined the body at the house of Dugger having at that examination omitted to notice it.

The testimony of all the witnesses for the State, viewed separately or together, fails to show any wrongful act on the part of the accused up to and including the discharge of the pistol, when H. C. Banks fell wounded. We are thus brought down to the few seconds of time intervening between the fall of deceased and the shooting him in the head by defendant, and we are, in view of all the previously occurring facts, limited to this brief interval of time and defendant's actions during this time for the determination of the question as to his guilt.

When deceased fell the defendant retained the pistol in his hand; and the witness, Dugger, states : "As Banks fell Mat made some steps, more than one and less than five, away from Banks, and then turned and stepped up near Banks, and stooped over and fired at Banks' head, the muzzle of the pistol being near Banks' head at the time it was fired." This witness' evidence shows that defendant had not left the body of Banks, that his movements in the four steps he took was at an angle of about forty-five degrees to the right; that he then turned to the left, stepped up to Banks and fired.

Taking the time in which the witness, Dugger, could advance in a rapid pace, or run from where he stood, when Banks fell, (fifteen feet from the gate,) up to the gate, and burst a cap on his pistol at defendant, not more than twenty seconds could elapse, and this is the entire time in which the accused could deliberate or contemplate the consequences of his act; and under what circumstances were these few seconds of time presented to him? He had at that moment come out of a struggle for his life with a man in the prime of life, healthy, active, and athletic; his equal in age, size, and physical power; they were as nearly

matched as two men could be under such circumstances. The man who lay at his feet was to him an utter stranger; he had stopped his way when leaving Dugger's yard, he had drawn and presented his pistol at defendant, and immediately after this contest closed—a struggle in which every element of physical activity and strength, every faculty of the mind, were strained to their utmost tension—with his feelings naturally excited to the highest point, his mind in one wild whirl of tumult, with less than twenty seconds of intervening time, under this pressure of excitement he fires the shot through his antagonist's head.

To call the shooting by defendant under such circumstances evidence of "a sedate, deliberate mind," or "a formed design," implies a disregard of the nature of terms intended to have a precise meaning, and when human life is involved to be applied under a rule of the utmost caution.

We are satisfied from an examination of all the facts in this cause that the defendant is not guilty of murder in the first degree; and while the verdict of a jury is entitled to great consideration, and will not be disturbed by reason of the fact that a different verdict could with propriety have been rendered in the special case, yet in a case like the present, where it is not a conflict of testimony, but a clear want of evidence to support the verdict, it will be set aside.

As this cause will be remanded no allusion will be made with reference to the offense charged, beyond the statement that the facts of the cause show that appellant is not guilty of murder in the first degree. (Atkinson *v.* The State, 20 Tex., 531; McCoy *v.* The State, 25 Tex., 33.)

The verdict of the jury not being supported by the evidence and contrary to law, a new trial should have been allowed the accused. For the error in overruling the defendant's motion for a new trial, the judgment is reversed and the cause is remanded.

REVERSED AND REMANDED.